All right, our next case for argument is 25-1074, TexasLDPC v. Broadcom. Please proceed. Good morning, and may it please the court, Warren Mabee for TexasLDPC. The district court dismissed this case five years in, months before trial, based on three legal errors. I'd like to first turn to the contract termination issue. The court treated what the court itself called a change in TexasLDPC's business, as if it was the end of the business itself. But the agreement always recognized TexasLDPC's shift to enforcement as a possible means of commercialization. TexasLDPC secured an exclusive license from A&M to use, sub-license, and enforce, a portfolio of patents and copyrights from A&M. It spent years, raised capital, it built out a team, developed a product, and it went to market. But nobody was going to take a license to something that Broadcom was taking for free. So it did what any reasonable company would do. It turned to enforcement to protect the portfolio, and to protect its commercial interests. Now, the theory that this shift somehow automatically terminated the agreement, it finds no support in the language of the agreement, says the opposite. If you look to section 110 of the agreement, it describes enforcement as a commercial effort. If you turn to section 2.2, it treats and it grants the right to enforcement, right along with the right to use and the right to sub-license. I guess the district court looked at the whereas clauses, right? And concluded, oh, there's nothing in the whereas clauses about enforcement. And so, therefore, what the contract is contemplating as being business operations is really more about developing the IP in terms of spreading the application of the patented technology, copyrighted technology, into new products and services. And that's different from suing people. Two things, Your Honor. First, yes, the district court did look to the whereas clause, and it gave the whereas clause an overriding consideration. And that's error. The whereas clause can't override unambiguous terms of the contract. Well, I guess there's nothing in this contract that specifically defines what business operations are. So then, you know, it's maybe less than clear what does it mean to cease business operations. So, collectively, I think that the does define what the business operations of Texas LDPC at least includes, and that is enforcement. But then, also, the court, when it looked to the whereas clause, and it looked at the language develop and commercialize the technology, the court just equated commercialization with licensing. What does it mean to your clients who cease business operations? What would that look like? If you're a client, we're answering that question. To stop being a going concern. To cease means to stop. Business operations are those operations that are part of your business to make money. So if you formally stop being, if you, you know, when we look at ceases business operations in Section 8.03, it's there with four other provisions that all mean formally ending the business. So ceasing business operations is just an informal means of shutting down, walking away from the business and your obligations. I would think cease business operations has to at least be within the context of what's contemplated in this licensing agreement. For example, if LDPC completely stopped doing anything in terms of generating revenue or attempting to generate revenue directly or indirectly with the IP and set up an ice cream parlor, would you say they ceased business operations in that context? Or would you say, no, there's still a business operation? Under Section 8.03, if they were still actively engaged in the business of making money, of trying to make money, I would say, no, they haven't ceased business operations. Now, if they had shifted entirely away from the contract, maybe other provisions may come into play. But for the purpose of 8.03, it is simply whether or not the company is no more. And I assume your client would say that LDPC and Texas A&M very much believe that they continue to have a licensing agreement and what is happening right now is just simply the enforcement mechanism is what they are concentrating. That's right. And so, you know, we're interpreting the contract in so many of these cases that we look at, it's two parties with competing views of what the contract says. Here, both Texas LDPC and A&M are in violent agreement what business operations means and that the contract has never terminated. But even if you don't have a terminated contract, that clears you of one hurdle, but the district court put a second hurdle in your way, which is failure to join an indispensable party. So why don't you turn to that issue? On the joinder issue, I think the court made two errors. First, the court held that Texas LDPC needed to join A&M because it did not have all substantial rights. That was error. There is no checklist of rights that must be conveyed. It's a totality of the circumstance. But this court has stressed repeatedly that the right to sue and the right to control enforcement, which includes the right to forgive infringement, is often the most important consideration. And here, Texas LDPC has the sole and only right to enforce these patents. Texas A&M can't choose who Texas LDPC sues. It can't control how Texas LDPC enforces the patents. And it can't get anybody that Texas LDPC sues out of liability by offering a license. Can you tell us how to view Texas A&M's assertion of sovereign immunity in the context of this finding? So in other words, Texas A&M has not supplied, I guess, certain discovery in this case. I don't know what really happened with respect to that, whether that was pursued as a discovery dispute or not. But tell us how we should view the Rule 19 issue through the lens of this sovereign immunity assertion. Sure. The assertion of sovereign immunity has no bearing on the joinder inquiry here, to the extent that you're concerned about the discovery and that Texas A&M invoked sovereign immunity to not provide discovery. Every court that has looked at this has said, Rule 19 is not a discovery rule. The reason for Rule 19A1A is to ensure that the court can accord complete relief amongst the parties. It's the quiet title situation where the court can't quiet title if it doesn't have a party that has a claim present. That's not the case here. Here, the court can accord complete relief, complete judgment as to the parties. And as I said, starting with the D.C. Circuit in Casello, every court that's looked at this said, discovery has no bearing on joinder. Is it your view that if LDPC has statutory standing under our case law, in other words, all substantial rights, then therefore that takes care of the Rule 19 indispensable party issue? Because in effect, LDPC is the patent owner and as a is not the patent owner and not a necessary party. Right. If Texas LDPC has all substantial rights, it is effectively the patentee. There's no reason to join A&M under this court's precedent in Luminara that sets forth the policy reasons why you may want to join the patent owner. None of those are present here. Only Texas LDPC can sue. So Broadcom's not subject to multiple suits. And here, A&M and Texas LDPC are in violent agreement that they want Texas LDPC to assert these patents. So their interests are aligned. A&M's not going to be harmed by not being joined. Well, but we have, it's a mixed bag of cases. Tell me how this case differs from PROPAT, for example. In PROPAT, the licensor had the right to consent to settlements, right? It could veto settlements. A&M doesn't have that right here. In PROPAT, the licensee didn't even have the right to use the patents. Texas LDPC has the exclusive right to use, sublicense, and sell. But you have the exclusive right to sublicense? What about subject to veto? There is no veto on Texas LDPC's right to sublicense. I suppose there is a veto on LDPC's right to assign its rights away under the license agreement to another party. Not to be unreasonably withheld, I think, is the phrase, right? Right. And I wouldn't call that a veto at all. I would say that's just like what this court found in Speedplay, where there, the right to assign was also subject to a shall not be withheld unreasonably clause, just like in Section 1206 here. Is that also true in Luminara? In Luminara, the licensee's right to assign away its rights to another party was subject to consent not to be unreasonably withheld? Right. That's right. In Luminara also, it's at 1346, the license was also subject to a not to be unreasonably withheld. So their other side and the district court concluded, hey, LDPC, Texas A&M is an indispensable party because of the need to get to all this licensing information. And that was a key element. And no complete relief can be accorded to you, the plaintiff, without having access to all of that information regarding licensing in possession of Texas A&M. So I know you have an argument that Rule 19 is not about discovery, but nevertheless, just analyze through the question of would there be some kind of diminution or incomplete analysis on the royalty question for the damages component of this case? What is your response to that? Absolutely not. But first, again, Rule 19 isn't concerned with discovery at all. But even if it was, Broadcom's expert put forth a reasonable royalty opinion of many, many pages going through the Georgia-Pacific factors. And not once did he say that he needed more information from A&M on any of the factors. And in fact, A&M provided tens of thousands of pages about their licensing. It just didn't respond to the third seriatim subpoena seeking 15 years of licensing policies. Discovery that its own expert said it didn't need. Counsel, do you have time for rebuttal? I do. Thank you very much. Mr. Rizzi. Thank you, Your Honors. May it please the Court, Stephen Rizzi for Broadcom. The district court properly dismissed this case on both grounds relied on. First, the district court properly ruled as a matter of contract interpretation that Texas LDPC had ceased its business operations, which triggered automatic termination of the agreement. The term ceased its business operations required the common sense, plain meaning interpretation adopted by the district court. Specifically, if it no longer does the things that the contract contemplated it would do. Doesn't the contract contemplate enforcement? So the contract permits enforcement and we don't dispute that enforcement comes along with the exclusive license. However, the task at hand interpreting ceases its business operations is, we believe, correctly articulated by the district court in terms of what it was actually intended to do. The recitals were properly relied on by the district court judge. They speak only of development and commercialization for the public benefit, make no mention of enforcement, and frankly don't even make mention. I guess why isn't enforcement a key component of commercializing IP? I mean that's the whole point of this contract to commercialize, i.e. generate revenue with this IP through sales, through licensing, and also through enforcement. I mean there's, A&M gets a percentage cut of each of these, but it seems to go hand-in-hand with licensing efforts because obviously licensing efforts break down and then without enforcement you can't really have an effective licensing campaign. I think we need to be a little careful about the term licensing because it could have multiple nuanced meanings. Here, what Texas LDPC was created to do was development and licensing. Licensing in this context means licensing its customers to make use of the technology that Texas LDPC was actually making available. The commercialization contemplated by the agreement, as the district court correctly found, and is supported by all the surrounding circumstances, was development, followed by testing, followed by demonstrating performance. Strategic enforcement of a patent also perfectly within a company's decision to do as a part of business. I would say the district court properly characterized it in the context of this specific agreement and the specific business of Texas LDPC as ancillary urn added perk. But why is it ancillary? I mean, we have a definition of commercially reasonable efforts under 1.10 that makes clear that enforcement efforts are commercially reasonable efforts under the contract. I would respectfully disagree with that, Judge Chen. Does the definition say that, what I just said? No, the definition is a definition of commercially reasonable efforts. It does define that with the two prongs, one associated with commercialization, and it also defines simply the level of effort for both purposes associated with enforcement. And all it says is commercially reasonable efforts with respect to both is defined in terms of expending resources commensurate with those resources ordinarily and reasonably necessary. To meet a milestone or to enforce copyrights or patent rights. So what that tells me pretty plainly is that patent enforcement is part and parcel of commercially reasonable efforts under this contract that's been contemplated by these two parties. And so let's just take that as a contract does contemplate enforcement as part of the contract. You can't terminate the contract even if a milestone is not met by LDPC, if LDPC is in the middle of an enforcement in front of litigation. So that seems to say that enforcement is really tied up inside of this The district court properly framed the inquiry as could enforcement become a complete substitute for commercialization in the context of what the agreement contemplated was required in terms of developing the IP, deploying the IP for the public benefit. So nothing in the agreement, nothing in the surrounding circumstances in any way contemplated or suggested that part of the believe that they are still in a contract and that this contract has not terminated. Where does your client come in to say that it has? I would submit that the litigation induced subjective beliefs after we file the motion to dismiss are entitled to very little weight as the district court properly found. Of course, it's convenient given hindsight for Texas A&M to now provide or attempt to provide a lifeline, but that respectfully should be given no weight as the district court did. So what about statutory standing? Yes. If LDPC does in fact have statutory standing, under those circumstances, typically the patent owner does not need to be joined as a party. I mean, that's what our case law says. Yes. So we would submit that under this court's precedent and considering the substance of the transaction as a whole, as we must to assess the all substantial rights inquiry. But would you agree that if LDPC does have statutory standing, then there's no need to bring Texas A&M in as a required party under Rule 19A? I mean, over the weekend, I was reading Luminara footnote 5, and footnote 5 seems to say that if you do in fact have statutory standing, then those components of Rule 19 that you consider for required party tell us you don't need to bring in the patent owner. I would submit under 19A1B that encompasses the substantial rights inquiry. District court did make a separate finding under 19A1A, I believe, that in addition to that, Texas A&M was a required party because of its rights at stake in the case. Okay. So why isn't this case, I mean, this case is not on all fours with any one of our cases, and unfortunately, we have all sorts of cases in this difficult area where there's licensing agreements like this with different facts. But why isn't Luminara the closest here? This party here, LDPC, has an exclusive right to make, use, and sell. It has the exclusive right to sublicense, and it has the exclusive right to enforcement. And as far as I can tell, there's no veto right or other power A&M has to give a defendant in a litigation, patent infringement litigation, any relief if LDPC chooses to file an infringement case. So several responses to that, Judge Chen. First of all, with respect to the right to enforce, Section 1102 makes very clear that A&M has the right to participate in any enforcement action, specifically to defend the patents. So although they may not have the ability to decide who to sue, they have a clear right to participate in any enforcement actions. To help defend the validity of the patent, right? Yes. And I would add that looking at the substantial rights inquiry as a whole, that necessarily and explicitly references court proceedings, as well as PTO post-grant proceedings. But they decided not to do But again, that's looking at sort of post hoc after the fact actions. I would submit the relevant inquiry is that they had the right to do it, and that's part of their right. Well, isn't Rule 19 really, it's structured to ensure that a party that is left out of the litigation is fully represented if they needed to be. Here, A&M has taken the position that they're fine with what's happening. So why should Rule 19 be implicated at all? Particularly Rule 19A. Well, certainly I would submit the inquiry under the all substantial rights analysis is much clearer and more powerful, and we believe controlling of the Rule 19A inquiry. And in addition to participation in enforcement, A&M also retained complete control over prosecution and maintenance and defense if there was an IPR. Is LDPC responsible for the costs of the maintenance fees? They should have to share in the cost of the maintenance fees, but they have no ability to control. The agreement does not grant LDPC any right to participate, much less control, any actions in the PTO, for example, concerning the validity of the patents, which I would submit is a significant retention of control of the patents. In addition, I also want to point out, and this is a distinction certainly with Luminara, A&M retained all rights in the Marvell license, which was a royalty-bearing license agreement. All of Texas LDPC's rights were subject to that agreement. That means it retained the right to enforce the agreement against Marvell, whether through a contract action or a right to infringement, if that agreement terminated. In our case law, have we said that the fact that the patent owner has licensed the patent right to one other party is decisive as to the question of whether a license to another party that has all these exclusive rights transferred changes the calculus of whether the licensee is a statutory standing? I wouldn't say it's decisive on its own, but combined with all the other rights that were retained, it is significant. I would agree with you if A&M had already licensed half the market and then granted this exclusive license to LDPC, that could be a problem in compromising what LDPC can do. But if it's just one license, I'm not so sure. Well, it is effectively half the market in this context. But I would also point out importantly, this was a royalty-bearing license, and that's a distinction like in Luminara, the court said, well, there was a retained non-exclusive license for use by the company and its affiliates, and if the patent would be invalidated, nothing changes. They still have the right to use that patent. Here, if the patent is invalidated, and this makes sense as to why Texas A&M would have wanted to keep control over defense, their royalty stream, which was significant under the Morvell Agreement, would evaporate. So I would submit that is an important distinguishing fact. In addition to the reversionary rights, the rights to veto alienation of the patents, there was some input control over sub-licensing. Texas LDPC's hands were tied. In what way? If they deviated from the restrictions, they had to get consent that were part of the agreement, they would have to get consent. The restrictions didn't look very significant to me. Is there one sub-licensing restriction that looked to you like an eye-popping one? Well, they were relatively sparse, but there was also language in there that restrained what they could take in consideration absent consent. So definitely strings attached on the sub-license right, and substantial reversionary rights, specifically the copyright rights. Before you go, can I ask you about your need for more licensing information from Texas A&M? You have a copy of the Morvell license, right? Yes. And you have a copy of this license with LDPC. I think those are the only two licenses related to this patent from Texas A&M, isn't that right? Well, that's true, but certainly the inquiry under the Georgia-Pacific factors is much broader than that and entails discovery concerning the licensors' licensing practices and policies. Other comparable licenses are certainly relevant beyond ones to these specific patents. Wasn't it the case, though, that your expert found it perfectly adequate for its decision? Well, experts, as experts are required to do, work with whatever information is available to them. So he formed opinions based on the information that was before him. That doesn't mean that there wasn't prejudice. But your expert didn't say, I need additional information to form his opinion? Well, no, but he didn't know what wasn't there, right? So it's the absence of that evidence. But I guess what I'm trying to figure out is, is there anything in our case law that says to do a proper, adequate, sufficient Georgia-Pacific factor analysis, you need the licensing information from the licensor, not only with regard to the patent in question, but with regards to other patents that the licensor owns? I would say it's indisputably relevant under the Georgia-Pacific factors, and the district court judge was really... Well, I didn't even see it in the Georgia-Pacific factors that there's something specifically calling out that you need the licensor's other patents and how they license those other patents. At least, I believe, it's factor four that specifically relates to the licensor's licensing policies and practices. And again, comparable licenses have been found by this court to include licenses beyond just those to the specific patents at issue. I would also add that the district court found on the 19B inquiry that it wasn't equitable for A&M, and by extension, Texas LDPC, to use sovereign immunity both as a shield, which is its only proper purpose, but also... Okay, Mr. Rizzi, you're kind of beyond your time, so you've got like... You can summarize it really quick. Thank you. Yes. Both as a shield and as a sword to hack evidence out of the case, and a hammer to shape that evidence to their liking. And that was a finding that we don't submit should be disturbed by the district court as to why it was not in good conscience and the equities proper for the case to continue without Texas A&M. Okay. Thank you, Your Honor. Yep. Mr. Maeve Beebe, come on back up for rebuttal time. Just a few quick points. Georgia-Pacific factor four specifically deals with a policy not to license. That's not present here. And again, Broadcom's expert was able to do a full Georgia-Pacific analysis without any discovery. But turning to the all rights inquiry... That doesn't make sense to me. I mean, if there's relevant evidence that could have better informed the decision that's being withheld, why is the fact that the expert was able to nonetheless do something based on what they had sufficient? Well, I think it... I'm not debating that discovery from the hypothetical license order could be relevant. But here, the expert was able to do it without any concern. And ultimately, the main point is it's irrelevant to the jointer inquiry here. We don't need to get to that because under Rule 19A, the need for discovery simply does not come into play. Now, turning to the all substantial rights inquiry, this is not like PROPAT, and it's not like Abbott or Asymmetrix or Lone Star or any of those other cases that found no all substantial rights, because they all were predicated on the licensor retaining some control over enforcement. And there is no control over Texas LAPC. What about 1102 and the right to participate? It has a right to participate. There is no... What does that mean? It means to have a seat at the table. And possibly input into the process? No, there's nothing in the contract that... What does participate mean? I mean, participate means like being a bystander, or does it mean an activist? Participants suggest engagement. It has a right to join, right? It has a right to be here. But there is nothing that, unlike those other cases where the licensor retained active control authority, where the contract specifically gave joint control. But what does a right to participate mean? It means a right to be a party if they want to join, if the state wants to join as the patent owner. That would allow them to make assertions and arguments, correct? Theoretically, I guess it could. But your interests are aligned in those situations, right? There's no difference of interest here between Texas LDPC and Texas A&M. And if there was any doubt, the confirmation that the parties both signed made clear that A&M wants Texas LDPC to be its sole enforcer of its rights. Okay, thanks. I thank both counsel. The case is under submission.